UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CLEVELAND THERMAL STEAM DISTRIBUTION, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CARLYLE LEADER, LLC, et al.,<br><br>Defendants. | CASE NO. 1:14-CV-02709<br><br>OPINION & ORDER<br>[Resolving Docs. 11, 23] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Cleveland Thermal Steam Distribution, LLC ("Cleveland Thermal") sues Defendant Carlyle Leader, LLC ("Carlyle Leader").[1/] Plaintiff Cleveland Thermal also sues two affiliated entities, Carlyle Development Group, Inc. ("Carlyle Development") and CDG Leader Corp. ("CDG Leader"), and says these affiliated companies are liable under veil piercing and agency theories for Defendant Carlyle Leader's alleged breach of contract.[2/]

Defendants Carlyle Development and CDG Leader have moved to dismiss the veil piercing and agency theories of liability.[3/] For the following reasons, the Court **DENIES** the motion to dismiss the veil piercing theory of liability (Count 2), and **GRANTS** the motion to dismiss the agency theory of liability (Count 3).[4/]

---

[1]Doc. 21.

[2]*Id.*

[3]Doc. 23. Plaintiff Cleveland Thermal has responded, Doc. 31, and Defendants have replied, Doc. 32.

[4]Defendants had previously filed a similar motion with respect to the initial complaint. Doc. 11. Because the amended complaint has superceded the initial complaint, the Court **DENIES AS MOOT** the earlier motion to dismiss.

## I. Background

### A. Factual Background

Defendant Carlyle Leader is a Delaware limited liability company that Plaintiff Cleveland Thermal describes as a "single-purpose entity" set up to own the Leader Building in downtown Cleveland.[5] Defendant CDG Leader is the sole member of Defendant Carlyle Leader, and is itself a Delaware corporation.[6] And Defendant Carlyle Development is a New York corporation that indirectly owns Defendant Carlyle Leader.[7]

In November 2013, Plaintiff Cleveland Thermal and Defendant Carlyle Leader signed a contract for Cleveland Thermal to provide steam to the Leader Building, which Carlyle Leader owned.[8] The contract was signed by the president of Plaintiff Cleveland Thermal and the President of Defendant Carlyle Development, with a notation that Defendant Carlyle Development was acting as "Manager" for Defendant Carlyle Leader, the "Customer" in the contract.[9]

By March 2014, Defendant Carlyle Leader had fallen behind on the payments under this contract.[10] On March 26, 2014, Cleveland Thermal sent Defendant Carlyle Leader a letter that set up a payment plan.[11] Defendant Carlyle Leader agreed to the modification described in this letter.[12]

In June 2014, Plaintiff Cleveland Thermal sent another letter to Defendant Carlyle Leader, which appears to unilaterally set monthly payment amounts of $31,461.43 for the five months

[5]Doc. 21 at 1.
[6]*Id.* at 2.
[7]*Id.*
[8]*Id.* at 2.
[9]Doc. 21-1 at 14.
[10]Doc. 21 at 2.
[11]Doc. 21-2.
[12]*Id.*

remaining on the contract.[13] On July 29, 2014, Plaintiff Cleveland Thermal sent Defendant Carlyle Leader a letter saying that Carlyle Leader had not complied with the payment plan, cancelling the payment plan, demanding immediate payment in full of $143,978.13, and threatening to discontinue service if payment was not received.[14]

Then, on August 12, 2014, Plaintiff Cleveland Thermal sent another letter to Defendant Carlyle Leader noting that payment still had not been received and that the steam contract would be terminated on August 25, 2014, unless Defendant Carlyle Leader cured its default.[15]

Three days later, on August 15, 2014, Carlyle Leader sold the Leader Building in a deal that did not include an assignment of the steam contract.[16] Plaintiff Cleveland Thermal continued to seek payment from Defendant Carlyle Leader without success.[17]

Plaintiff Cleveland Thermal then brought suit against all three Defendants.

**B. Veil Piercing Allegations**

With its amended complaint, Plaintiff Cleveland Thermal says a number of factors adequately allege that Defendants Carlyle Development and CDG Leader are liable on a veil piercing theory.

The amended complaint points to Defendants' statement attached to Defendants' notice of removal in this case that "CDG Leader Corp.[] has directed, controlled and coordinated the activities

[13]Doc. 21-3.
[14]Doc. 21-4.
[15]Doc. 21-5.
[16]Doc. 21 at 3.
[17]*Id.* at 4.

of Carlyle Leader . . . ."[18] The amended complaint also alleges that Thomas Fear served in various capacities for multiple Defendants. In particular, he was the Director of Asset Management and Acquisitions for Defendant Carlyle Development,[19] but also corresponded with Plaintiff Cleveland Thermal on behalf of Defendant Carlyle Leader.[20]

Plaintiff Cleveland Thermal's amended complaint further alleges that in prior litigation, all three Defendants collectively admitted to "operat[ing] the Leader Building."[21] And the amended complaint alleges that Defendant Carlyle Development's website indicates that Defendant Carlyle Development has operated the Leader Building, along with other properties.[22]

In addition, Plaintiff Cleveland Thermal alleges that Defendant Carlyle Leader was "grossly undercapitalized."[23] In support, it points to a letter attached to the amended complaint in which Defendant Carlyle Leader indicates that it has a lockbox arrangement with its lender for income from the property.[24]

Finally, Plaintiff Cleveland Thermal alleges that "[w]hen Cleveland Thermal was negotiating the payment plan for The Leader Building, Defendants either knew that Carlyle Leader was not able to make the payments or Defendants did not intend on making the payments" and that "Carlyle

---

[18]Doc. 21-7 at 2.

[19]*See* Doc. 21 at 5; Doc. 21-7 at 1.

[20]*See* Doc. 21 at 5; Doc. 21-8.

[21]Doc. 21 at 5; Doc. 21-9 at 1.

[22]Doc. 21 at 5-6; Doc. 21-10. In their answers, Defendants dispute that this website is actually that of Defendant Carlyle Development, saying instead that it belongs to the "Carlyle Development Group of Companies." *E.g.*, Doc. 25 at 4-5. Although the printouts of the website that Plaintiff Cleveland Thermal attached to the amended complaint contain language supporting Defendants' position, the Court nonetheless accepts Plaintiff Cleveland Thermal's allegation that the website belongs to Defendant Carlyle Development for purposes of ruling on this motion to dismiss.

[23]Doc. 21 at 6.

[24]Doc. 21-8. The letter, which was sent in April 2013–before the events in this case–indicates that Defendant Carlyle Leader simultaneously sent payment in the amount of $74,020.39. *Id.*

Leader was in default with its lender and Defendants were engaging in delay tactics for the purpose of avoiding the shut-off of its service while they were negotiating for the sale of The Leader Building."[25]

## II. Law and Analysis

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[26] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[27] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations."[28]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] The plausibility requirement is not "akin to a probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[30]

Although Rule 8 provides the general pleading standard, some matters must be pled with greater specificity. As relevant here, allegations of fraud in support of piercing the corporate veil

---

[25] Doc. 21 at 3-4; *see also id.* at 6.
[26] Fed. R. Civ. P. 8(a)(2).
[27] *Iqbal*, 556 U.S. at 678-79 (citations omitted).
[28] *Id.*
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[30] *Id.*

must meet the requirements of Federal Rule of Civil Procedure 9(b).[31]

**B. Choice of Law**

The parties dispute which states' law should govern Plaintiffs' veil piercing claims. Veil piercing law is substantive law. In diversity cases, the Court applies the substantive law including the choice of law rules of the forum state.[32] Defendants say that Ohio's "internal affairs doctrine" points to the law of the state of incorporation in deciding whether to pierce the corporate veil.[33] Defendants thus say the Court should look to New York law to resolve the veil piercing claims against Defendant Carlyle Development and Delaware law to resolve the veil piercing claims against Defendant CDG Leader. By contrast, Plaintiff Cleveland Thermal argues that the claims involve the rights of a creditor and are thus not internal.[34]

The Court need not resolve this choice of law issue. Under the law of any of the three involved states, veil piercing has two similar elements. The first is that "control over the corporation by those held liable was so complete that the corporation has no separate mind, will, or existence."[35] The second is that this control was exercised "in such a manner as to commit fraud, an illegal act,

---

[31] *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (internal citation omitted).

[32] *See id.*

[33] Doc. 23-1 at 7-8.

[34] Doc. 31 at 3 n.1.

[35] *Dombrowski v. Wellpoint, Inc.*, 895 N.E.2d 538, 543 (Ohio 2008); *see also Southeast Texas Inns*, 462 F.3d at 675 n.14 ("Under Delaware law, to hold a parent corporation liable for the actions of a subsidiary pursuant to the alter ego doctrine, a plaintiff must demonstrate that the parent corporation exercises 'exclusive domination and control' to the point that the subsidiary 'no longer ha[s] legal or independent significance of [its] own.'" (quoting *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (alterations in original)); *Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 807, 810 (N.Y. 1983) ("[T]he owners exercised complete domination with respect to the transaction attacked . . . .").

or a similarly unlawful act."[36]

Because the elements are similar and because no party has shown that any state differences would affect the outcome of this case, the Court need not resolve the choice of law question.[37]

Likewise, the Court need not resolve the choice of law question with respect to Plaintiff Cleveland Thermal's agency claim against Defendant Carlyle Development. As described below, Plaintiff Cleveland Thermal has not adequately pled a theory of agency liability under the law of any state.

**C. Veil Piercing**

*1. No Separate Existence*

Defendants challenge the sufficiency of the amended complaint's allegations that Defendant Carlyle Leader had no separate mind, will or existence. In support Defendants note that many of the amended complaint's allegations related to this prong are mere legal conclusions.

To some extent, Defendants are correct. Allegations such as "Carlyle Leader is the alter ego of [the other two Defendants]"[38] and "[the other two Defendants'] control of Carlyle Leader was so complete that Carlyle Leader had no separate mind, will, or existence of its own"[39] are legal conclusions that the Court does not simply accept as true, even at the motion to dismiss stage.

---

[36] *Dombrowski*, 895 N.E.2d at 545; *Southeast Texas Inns*, 462 F.3d at 674 ("[U]nder . . . Delaware . . . law fraud or similar injustice must be demonstrated in order to pierce the corporate veil." (internal quotation marks and citations omitted)); *Morris*, 623 N.E.2d at 810-11 (requiring a showing that the "domination was used to commit a fraud or wrong against the plaintiff").

Ohio law also requires that "injury or unjust loss resulted to the plaintiff from such control and wrong." *Dombrowski*, 895 N.E.2d at 845. There is no real dispute that if Ohio law applies and the first two elements are met here, this third element would be as well.

[37] *Cf. Southeast Texas Inns*, 462 F.3d at 672-76 (finding the question of whether Delaware or Tennessee law applied to a veil piercing claim "not outcome-determinative").

[38] Doc. 21 at 4.

[39] *Id.*

But the amended complaint also contains factual allegations, many of which go to factors that courts consider in deciding whether plaintiffs have adequately alleged the first element of an alter ego claim. For example, the amended complaint notes the common employment of Thomas Fear.[40/] And Fear's declaration in support of removal in this case, attached to the amended complaint, reflects that at least Defendant CDG Leader shares a common address with Defendant Carlyle Leader.[41/] Common employment and location, while insufficient by themselves, can contribute to a finding that a corporation lacked a separate mind, will, or existence.[42/]

Plaintiff Cleveland Thermal's amended complaint also alleges that all three Defendants jointly operated the Leader Building, among other properties, and that Defendant Carlyle Leader was undercapitalized.[43/] And the amended complaint further notes the portion of Fear's declaration that says that "CDG Leader has directed, controlled and coordinated the activities of Carlyle Leader . . . ."[44/] Again, while each of these allegations standing alone would be insufficient to satisfy the first element of an alter ego claim, they can counsel in favor of such a finding in combination with other factors.[45/]

Although this is a close call, the Court concludes that the factors Plaintiff Cleveland Thermal has alleged are sufficient to satisfy the first element of its veil piercing claim. If Cleveland Thermal is able to produce evidence substantiating each of its allegations, it may be able to convince a reasonable fact finder that Defendant Carlyle Leader lacked an independent existence to the degree

---

[40] *Id.* at 5.

[41] Doc. 21-7 at 2.

[42] *See, e.g.*, *Fortress Value Recovery Fund I, LLC v. Columbus Components Grp.*, No. 1:11-cv-00200, 2011 WL 1130442, at *4 (N.D. Ohio Mar. 28, 2011).

[43] Doc. 21 at 5-6.

[44] *Id.* at 4 (quoting Doc. 21-7 at 2).

[45] *See, e.g.*, *Fortress Value*, 2011 WL 1130442, at *4.

required by the veil piercing law. That is all Rule 8 requires. Accordingly, the Court concludes that Plaintiff Cleveland Thermal has satisfied its pleading burden with respect to the first element of its veil piercing claim.

*2. Fraud or Illegality*

As noted above, the second element of a veil piercing claim is that the control and domination was used to commit an illegal, fraudulent, or similar act.[46/] By itself, the breach of a contract does not typically satisfy this requirement, especially when the contract is between two sophisticated commercial parties.[47/]

Where, as here, a plaintiff seeks to pierce the corporate veil on the basis of fraud, that fraud must be pled with the specificity required by Federal Rule of Civil Procedure 9(b).[48/] "Rule 9(b) generally requires a plaintiff to plead the specific 'time, place, and content of the alleged misrepresentation on which she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"[49/]

In the present case, Plaintiff Cleveland Thermal alleges the Defendants used a fraudulent scheme that sought to delay the shut-off of steam service by negotiating a payment plan they knew would not be complied with. And as Plaintiff Cleveland Thermal points out in its response to Defendants' motion to dismiss, "the Amended Complaint describes the promissory fraud in detail, including the precise mechanism of the fraud the March 26, 2014, Cleveland Thermal letter

---

[46] *Dombrowski*, 895 N.E.2d at 545; *Southeast Texas Inns*, 462 F.3d at 674 ("[U]nder . . . Delaware . . . law fraud or similar injustice must be demonstrated in order to pierce the corporate veil." (internal quotation marks and citations omitted); *Morris*, 623 N.E.2d at 810-11 (requiring a showing that the "domination was used to commit a fraud or wrong against the plaintiff").

[47] *Southeast Texas Inns*, 462 at 679 n.16 (internal citation omitted).

[48] *Id.* at 672 (internal citations omitted).

[49] *Fortress Value*, 2011 WL 1130442, at *6 (quoting *Sanderson v. HCA TheHealthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

agreement confirming the payment plan for which Defendants had no present intention of complying with when it was entered."[50]

Defendants protest that this case is controlled by *Southeast Texas Inns, Inc. v. Prime Hospitality Corp*, where the Sixth Circuit held veil piercing allegations insufficient to meet the requirements of Rule 9(b).[51] But in that case, the Sixth Circuit relied heavily on the rule that a mere contractual breach is insufficient to pierce the corporate veil.[52] The court also found it "significant" that the Defendants had complied with the contract in question at a loss for several years,[53] and concluded that "[i]n the present context involving a contract, [the plaintiff] does not allege that it was misled at the time the Lease was executed."[54]

By contrast, Plaintiff Cleveland Thermal has alleged more than a mere breach. It has alleged that Defendant Carlyle Leader controlled by the other two Defendants fraudulently signed off on the billing modification agreement set forth in Cleveland Thermal's March 26, 2014, letter without any intent of making the required payments. In *Southeast Texas Inns*, the Sixth Circuit noted the absence of an allegation that the plaintiff was misled at the time of the agreement. But that is precisely what Plaintiff Cleveland Thermal's amended complaint has alleged.[55]

* * *

For the above reasons, the Court will **DENY** Defendants' motion to dismiss Plaintiff Cleveland Thermal's veil piercing claims. Although veil piercing claims are extraordinary, and the

---

[50]Doc. 31 at 8.

[51]462 F.3d 666.

[52]*Id.* at 679 ("More importantly, these conclusory allegations, couched in terms of a contractual breach, are not tantamount to the fraud or injustice required to pierce the corporate veil.").

[53]*Id.* at 678.

[54]*Id.* at 680-81.

[55]*Id.* at 678.

evidence required to establish one at summary judgment or trial is substantial, the amended complaint adequately alleges facts that, if supported by sufficient evidence, could allow a reasonable fact finder to pierce the corporate veil in this case.

**D. Agency**

Defendant Carlyle Development also challenges Plaintiff Cleveland Thermal's agency claim. In that claim, Cleveland Thermal attempts to hold Defendant Carlyle Development liable for the damages resulting from the contract breach on an agency theory. The complaint is somewhat unclear what agency relationship Plaintiff Cleveland Thermal is alleging. But Cleveland Thermal's response to the motion to dismiss clarifies that Cleveland Thermal seeks to hold Defendant Carlyle Development liable by saying Defendant Carlyle Leader was acting as an agent of Defendant Carlyle Development.[56/]

Defendants are correct, however, that the amended complaint contains insufficient allegations that Defendant Carlyle Leader was acting as an agent of Defendant Carlyle Development when it contracted with Plaintiff Cleveland Thermal. The contract itself which is attached to the complaint clearly states that the contract runs between Cleveland Thermal, as "Company," and Defendant Carlyle Leader, as "Customer."[57/] And all of the letters Plaintiff Cleveland Thermal attaches to its complaint in which it seeks payment on the contract were sent only to Defendant Carlyle Leader, not to Defendant Carlyle Development.[58/]

Nothing in the amended complaint suggests that the alleged agent, Defendant Carlyle Leader, was acting with express, implied, or apparent authority to bind the alleged principal, Defendant

---

[56]Doc. 31 at 10-11.

[57]Doc. 21-1 at 12.

[58]*See* Docs. 21-2, 21-3, 21-4, 21-5, 21-6.

Carlyle Development. Nor does anything in the amended complaint suggest that any of the Defendants held out Defendant Carlyle Leader as either having any authority to enter the steam contract on behalf of Defendant Carlyle Development or making any attempt to enter the steam contract on behalf of Defendant Carlyle Development.

Although agency is a question of fact, its elements including some type of authority must still be plausibly alleged to survive a motion to dismiss.[59] The amended complaint does not meet this standard.

Accordingly, the Court will **GRANT** Defendant Carlyle Development's motion to dismiss the agency count of Plaintiff Cleveland Thermal's amended complaint.

## IV. Conclusion

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Specifically, the motion to dismiss the agency claim pled in Count 3 is **GRANTED** and the motion to dismiss the veil piercing claim pled in Count 2 is **DENIED**.[60]

IT IS SO ORDERED.

Dated: May 4, 2015

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[59] *See* *Midkiff v. Adams Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

[60] Defendants had previously filed a similar motion with respect to the initial complaint. Doc. 11. Because the amended complaint has superceded the initial complaint, the Court **DENIES AS MOOT** the earlier motion to dismiss.